IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| RAYMOND F. DANIELS, III ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CAUSE NO.:  1:09-cv-00121-WCL-RBC |
| ) | |
| MICHIANA METRONET, INC. d/b/a ) | |
| CENTENNIAL WIRELESS and ) | |
| CENTENNIAL COMMUNICATIONS, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT'S BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

This case turns on a single issue: Whether Centennial Wireless properly paid Daniels overtime pursuant to the so-called "fluctuating work week" method, as set forth in Title 29 Part 778.114 of the Code of Federal Regulations.[1]  The undisputed evidence proves that it did.

Centennial employed Daniels as an Inside Sales Representative Trainee and paid him a base salary plus commissions.  Centennial calculated and paid Daniels' overtime pay pursuant to the formula detailed in 29 C.F.R. §778.114.  Eventually Centennial terminated Daniels for failing to meet sales goals.  Angry with that decision, Daniels challenges Centennial's right to pay him pursuant to § 778.114.  The only evidence Daniels presents to support his contention is his final pay check showing he was paid $5.05 less than his normal weekly salary for his final week of work.  Daniels argues that because Centennial did not pay his full salary that final week – he worked Sunday through Wednesday that week – he must be an hourly employee and therefore entitled to time and a half for all overtime work he performed throughout his employment.

---

[1] Counts II and III of Daniels' original complaint were dismissed by Agreed Entry on July 27, 2009 (doc. # 25), leaving only Count I "Unpaid Overtime under the Fair Labor Standards Act."

1

As detailed below, Centennial met all prerequisites to classifying Daniels as salary non-exempt under the FLSA.  Furthermore, the parties had a clear mutual understanding that Daniels' base salary was intended to compensate him for all hours working in a given week, whether few or many, and Centennial paid Daniels all sums to which he is entitled.  Finally, the Code of Federal Regulations specifically authorized Centennial to pay Daniels hourly for his final, partial week of work.  Accordingly, Daniels' claim fails to state a claim upon which relief can be granted as a matter of law, and summary judgment is appropriate.

## I. Statement of Material Facts.

After years in the banking and mortgage loan industry, Daniels applied for employment with Centennial because it was a local business and he had heard from friends that it was a fair company and a good place to work.  [Deposition of Raymond F. Daniels, III (hereinafter "Daniels Dep."), p. 6-11, 14, 19, 23.]  Before he had even received a formal offer, one of those friends, Michael Loveless, explained to Daniels that he would receive base pay plus commission and that he would be paid "halftime" for overtime work.  [Daniels Dep., 19, 34-38.]  Daniels and Loveless worked together previously at Chase Bank.  [Daniels Dep., 31.]  At the time of this discussion, Loveless managed Centennial's Decatur store.  [Daniels Dep. 32.]  Loveless explained that Daniels' starting base pay would be $18,000 annually and that it would increase incrementally thereafter.  [Daniels Dep., 36-37.].  Loveless told Daniels he might be called upon to work mandatory overtime during the holiday season and that it was company policy to pay "halftime" not time and a half for overtime work.  [Daniels Dep., 38.]  Loveless suggested Daniels look for further explanation of Centennial's pay structure during his formal training course.  [Daniels Dep., 39.]  Daniels did not seek further clarification.  [Daniels Dep., 39.]

By letter dated May 20, 2008, Centennial formally offered Daniels the position of Inside Sales Representative Trainee Level I. [Daniels Dep., 33, Ex. 2.[2]] The offer letter spelled out the basic pay structure, stating in relevant part:

> **Training Requirements:** New hires begin employment by attending three weeks of Sales Training at Centennial University in Fort Wayne, IN. . . . .
>
> *********************************************************************
>
> **Employment at Will:** As a condition of employment, you will be asked to sign and read our Associate Handbook, which explains "at will" employment, and to sign the Sales Compensation plan, which described how you will be paid, includes a non-disclosure agreement and confidentiality agreement.
>
> **Compensation:** You will receive a salary of $692.30 per pay period, which annualizes to $18,000. You are paid 26 times per year on a bi-weekly basis. In addition you will be paid a monthly commission, which is based on achieving the monthly quota.

[Ex. 2.] The offer letter goes on to explain the details of and prerequisites for future, incremental salary increases. [Ex. 2.] Daniels read and accepted the offer by signing the letter on May 22, 2008. [Daniels Dep., 33, 44.]

Daniels began employment with Centennial on June 2, 2008. [Daniels Dep., 45.] He worked as a "shadow" his first week then attended three weeks of training. [Daniels Dep., 47-48; Deposition of Michael Filson (hereinafter "Filson Dep."), p. 9.] Training Manager Mike Filson led Daniels' training class. [Filson Dep., 4.] Filson told the class they would be paid "halftime" for overtime work. [Daniels Dep., 50.] The Centennial Associate Handbook, which was given to Daniels in hardcopy and formed the basis of his understanding of how he was paid, states: "Certain nonexempt positions (i.e. inside sales representatives) are paid overtime on a sliding scale." [Daniels Dep., 51, 58-59; Ex. 4, p. 18.] Daniels understood the "sliding scale" reference to mean he was paid "halftime" for overtime work. [Daniels Dep. 59.] The Associate

---

[2] The parties agreed to keep exhibit numbering consistent throughout all depositions in this matter. Defendant continues to use those exhibit numbers in this brief.

3

Handbook further directs employees to consult their "compensation agreement or manager for more details." [Daniels Dep., 60, Ex. 4, p. 18.]

Centennial's Sales Compensation Plan was presented to Daniels and the others in his training class electronically. [Filson Dep., 7; Daniels Dep., 74-79; Ex. 5.] Employees are given as much time as is necessary to read the document and ask any questions they might have, and then they must acknowledge having read and understood the plan. [Filson Dep., 8-10.] Had Daniels not acknowledged having read and understood the plan, Centennial's commission department would not have issued him any commission checks. [Filson Dep., 10-11.] Daniels did in fact receive commission checks from Centennial. [Ex. 14, p. 115, 118, 121, 124, 128.]

The Centennial Wireless Sales Compensation Plan states in relevant part:

### Inside Sales Rep Overtime Program

Our Inside Sales Reps are salaried, non-exempt associates. This means two things. First, an ISR receives a full weekly salary regardless of the number of hours worked. For example, if an ISR missed two hours of scheduled work time due to an auto accident, the rep's salary is not reduced by the two missed hours. We believe this is the professional way to treat our Inside Sales Reps.

Second, the amount paid for any overtime is based on a calculated amount, not one and on-half times as an hourly associate would be paid. This is also the professional way to treat salaried, non-exempt associates.

The following are the guidelines for calculating ISR overtime pay.

1) A workweek is defined as Sunday at 12:00 am through Saturday at 11:59 pm.
2) ISR overtime is calculated based on workweek.
3) An ISR's annual salary is divide into 52 weeks to obtain a weekly salary, ($24,000 divide by 52 is $461.54)
4) The weekly salary is divided by the number of actual, total hours worked during the workweek to calculate the individual ISR's hourly rate.
5) The amount paid for overtime hours is one-half the calculated hourly rate.

4

   6)  The number of hours worked over forty (40) during the workweek is multiplied by the calculated hourly rate to determine the total amount paid.

 The following example shows how to calculate the overtime paid to an ISR.
- Fifty (50) hours worked during the workweek.
- Weekly salary is $451.54 ($24,000 divided by 52 weeks).
- Hourly rate is $9.23 ($451.54 divided by 50 hours).
- Calculated hourly rate is $4.61 (one-half the $9.23 hourly rate).
- Ten (10) hours worked beyond forty (40) hours.
- Amount paid for overtime is $46.10
- Overtime is paid in arrears twice monthly.

 *********************************************************************

[Ex. 5, p. 4-5.]

 Daniels signed Centennial's Sales Compensation Plan electronically on June 25, 2008. [Daniels Dep., 78-79; Ex. 6.] The signature page of the plan states: "I have read and understand the . . . Centennial Wireless Sales Compensation Plan. I agree to be bound by the terms, conditions, and policies contained in the Plan." [Ex. 5, p. 15] Exhibit 6 is a time stamped confirmation of Daniels' electronic signature and acceptance of Centennial's Sales Compensation Plan during the course of his training. [Daniels Dep., 74-75, 77; Ex. 6.]

 Employees are free to access or print the Sales Compensation Plan at anytime via the Company's intranet, "CentWire." [Filson Dep., 11.] Daniels accessed Centennial's intranet regularly for a variety of customer related issues. [Daniels Dep., 70-71.] He used the intranet to access pricing information, as well as specials, promotions and credits for his own sales. [Daniels Dep., 71.] There were several different areas on Centennial's intranet and it is equipped with a search function. [Daniels Dep., 71.] However, Daniels never searched Centennial's intranet for information relating to overtime pay. [Daniels Dep., 71.]

Mike Loveless never told Daniels what would happen to his pay if he worked less than forty (40) hours in a given week. [Daniels Dep., 43.] There was no discussion during the training session about what would happen if Daniels worked less than forty (40) hours in a given week. [Daniels Dep., 59.] In fact, aside from his own final pay check, Daniels is not aware of *any* situation in which he or any other Inside Sales Representative had his or her pay docked for working less than forty (40) hours in a week. [Daniels Dep., 62, 102; Exs. 7 and 14.]

To the contrary, Centennial paid Daniels his full salary on at least two (2) occasions when he worked fewer than forty (40) hours. Daniels' time cards and payroll records indicate:

- Daniels worked 39.75 hours the week of August 17 – 23, 2008 but received his full salary. [Ex. 7, p. 101, Ex. 14, p. 125.]

- Daniels worked 38.75 hours the week of December 28, 2008 – January 3, 2009, but received his full salary. [Ex. 7, p. 91 Ex. 14, p. 111.]

Moreover, Centennial paid Daniels overtime premium pay on several occasions when he actually worked less than forty (40) hours, but logged more than forty (40) by taking paid holiday time.

- Daniels actually worked thirty-nine (39) hours the week of November 23–29, 2008 and took two (2) paid holidays totaling sixteen (16) hours. [Ex. 7, p. 94.] Though he actually worked less than forty (40) hours that week, Centennial paid him fifteen (15) hours of overtime premium pay. [Ex. 14, p. 114.][3]

- Daniels actually worked only 32.75 hours the week of December 21–27, 2008 and took a paid holiday totaling eight (8) hours. [Ex. 7, p. 92.] Nevertheless, Centennial paid him .75 hour of overtime premium pay. [Ex. 14, p. 112.]

- Daniels actually worked only 34.75 hours the week of January 4–10, 2009 and took a floating paid holiday totaling eight (8) hours. Centennial paid him an additional 2.75 hours of overtime premium pay. [Ex. 7, p. 91, Ex. 14, p. 91.]

---

[3] Overtime paid for the first week of the pay period is listed as "Sliding Scale Week 1." Overtime pay for the second week of the pay period is listed as "Sliding Scale Week 2." Though not relevant to this dispute, once commission payments are calculated and paid, Centennial retroactively recalculates the employees' regular rate for each week in light of any commissions paid. Those additional amounts are then paid as "Sliding Scale Week 3."

- Daniels actually worked 37.5 hours the week of February 15–21, 2009, took eight (8) hours of paid holiday time and yet received 5.5 hours of overtime premium pay.  [Ex. 7, p. 88, Ex.14, p. 108.]

Daniels felt comfortable asking questions and raising complaints with his managers Mike Loveless and Joe Ammerman, as well as their boss, District Manager Trent Schott and company trainer Michael Filson – in fact he raised various issues with each of these gentlemen and even complained that he did not like the fact that he was paid "half-time" instead of time and a half for overtime pay – but he never asked any of them to further clarify Centennial's overtime pay scheme. [Daniels Dep., 31, 50, 55, 59-60, 87, 93-94, 118, 119.]

The number of hours Daniels actually worked varied from week to week. [Daniels Dep., 100-103.] He was rarely scheduled to work more than forty (40) hours per week but he was expected to stay past the end of his scheduled shift if he was with a customer. [Daniels Dep., 102-105.] Daniels' timecards show his hours fluctuated from week to week. [Ex. 7.] The hours Daniels actually worked ranged from a low of 32.25 hours (exclusive of paid holiday and sick time) the week of November 30 – December 6, 2008 to a high of 51.75 hours the week of July 13–19, 2008. [Ex. 7, p. 93 & 103.] The most Daniels ever worked in one week was 51.75 hours the week of July 13–19, 2008. [Ex. 7, p. 103.] Even that week, his hourly rate exceeded minimum wage. Daniels was earning a base salary of $18,000 annually or $346.15 per week at the time. [Ex. 2, Ex. 14, p. 127.] Dividing his weekly base of $346.15 by 51.75 hours equals $6.69 per hour. At the time, the minimum wage was $5.85 per hour. 29 U.S.C. § 206 (1)(A).

Daniels worked Sunday – Wednesday, February 22-25, 2009 and was terminated at the end of his shift on Wednesday, February 25, 2009. [Daniels Dep., 141-143, Ex. 7, p. 87.] This was the final day of the sales month. [Daniels Dep., 145-146; Ex. 5, p. 15.] Centennial's sales or "commission month starts on the 26th of one month and ends of the 25th of the following

7

month." [Ex. 5, p. 15.] Centennial paid Daniels for the 31.5 hours he actually worked, plus eight (8) hours of holiday pay for a total of 39.5 hours his last week of employment. [Ex. 7, p. 87; Ex. 14, p. 107.] Centennial also paid Daniels for forty eight (48) hours of unused vacation time. [Ex. 14, p. 107.]

## II. Summary Judgment Standard.

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c)(2). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

The purpose of summary judgment is to "isolate and dispose of factually unsupported claims." Michael v. St. Joseph's County, 259 F.3d 842, 845 (7th Cir. 2001) *citing* Albiero v. City of Kankakee, 246 F.3d 927, 932 (7th Cir. 2001). Daniels must "do more than raise a 'metaphysical doubt' as to the material facts." Michael, 259 F.3d at 845 *quoting* Wolf v. Northwest Ind. Symphony Soc'y, 250 F.3d 1136, 1141 (7th Cir. 2001). To survive Centennial's motion for summary judgment, Daniels must set forth "definite, competent evidence" showing there is a genuine issue for trial. Michael, 259 F.3d at 845.

When considering Centennial's motion, this Court must construe facts and draw inferences in a light most favorable to Daniels; however, it need only consider reasonable inferences which can be drawn from those facts. This Court is "not required to draw every conceivable inference from the record." Bank Leumi Le-Israel v. Lee, 928 F.2d 232, 236 (7th

Cir. 1991). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Abrams v. Walker, 307 F.3d 650, 653 (7th Cir. 2002) *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 248; 106 S. Ct. 2505; 91 L Ed. 2nd 202 (1986). This Court need not "'strain to find' material fact issues where there are none." Secretary of Labor v. Lauritzen, 835 F.2d 1529, 1534 (7th Cir. 1987) (citations omitted). "Summary judgment is not a discretionary remedy. If the plaintiff lacks enough evidence, summary judgment must be granted." Jones v. Johnson, 26 F.3d 727, 728 (7th Cir. 1994).

As set forth below, there are no genuine issues of material fact here. Accordingly, Centennial is entitled to judgment in its favor as a matter of law.

### III.  Argument.

**A.    Centennial Properly Paid Overtime Pursuant 29 C.F.R. § 778.114.**

The Fair Labor Standards Act mandates employers pay non-exempt employee one and one-half times their regular rate for hours worked in excess of a forty per week. 29 U.S.C. § 207(a). In drafting the FLSA however, Congress did not define "regular rate" or explain how an employee's "regular rate" is to be computed. 29 U.S.C. § 201 *et seq.*, Condo v. Sysco Corporation, 1 F.3d 599, 604, fn 6 (7th Cir 1993). Nor did Congress address the notion of fluctuating work weeks. Condo, 1 F.3d at 604. Instead, Congress charged the Secretary of Labor with filling in the gaps by formulating policy and making rules. Id. at 604-605, 29 U.S.C. § 204. The Secretary did exactly that in promulgating 29 U.S.C. § 778.114.

Section 778.114 allows an employer to pay a salaried employee whose hours of work fluctuate from week to week a fixed amount as straight-time pay for whatever hours the employee is called upon to work in a given workweek, whether few or many. 29 C.F.R. §

778.114(a); Condo, 1 F.3d at 601-602. Section 778.114 further authorizes the employer to pay that employee fifty percent of his calculated regular hourly pay rate for that week as premium pay for each hour of work he actually performed over forty (40) that week. Id.. The employee's "regular" hourly pay rate is calculated each week by dividing the employee's weekly salary by the total number of hours that he actually worked that week. Id. As the Seventh Circuit explained, "[t]he fixed salary compensates the employee for all his hours, the overtime ones included. He therefore received 100 percent of his regular rate for each hour that he worked. As such he is entitled only to an additional fifty percent of his regular rate for the hours that he worked in excess of forty." Id. at 605 *see also* Heder v. City of Two Rivers, 295 F.3d 777, 779 (7th Cir. 2002) (If an employee works a "fluctuating work week" then the "standard compensation covers *any* number of hours, so that the only statutorily required payment is the 50% premium for overtime.") (emphasis in original)

Though § 778.114 ordinarily requires the employer to pay the full weekly salary even if the employee works less than forty (40) hours, there are exceptions. For example, an employer is not always obligated to pay an employee his full weekly salary during his first and last weeks of employment. 29 C.F.R. § 541.602. Instead, the employer may choose to pay the salary non-exempt employee hourly at a rate that is proportional to his salary during his initial and/or terminal weeks of employment. 29 C.F.R. § 541.602(b)(6). Likewise, an employer may legally dock an employee's salary if the employee is willful absent or tardy. Samson *et al.* v. Apollo Resources, Inc., 242 F.3d 629, 639 (5th Cir 2001).

This so called "fluctuating work week" structure is appropriate so long as: (1) the employee's hours fluctuate from week to week; (2) the employee receives a fixed salary that remains the same from week to week regardless of the number of hours worked; (3) the fixed

10

salary is sufficient to provide compensation at a rate at or above the minimum hourly wage; (4) overtime premium pay for each hour worked above forty (40) is at least one-half the employee's calculated hourly rate for that week; and (5) the parties have a clear mutual understanding that the fixed salary is intended to provide straight time compensation to the employee for how ever many hours he was called upon to work that week. Condo, 1 F.3d 601-602; Lance v. The Scotts Company, 2005 U.S. Dist. LEXIS 14949, *10-11 (N.D.Ill. 2005).

### 1. Daniels' Hours Fluctuated From Week to Week.

The Seventh Circuit made clear that an employer may employ 29 C.F.R. § 778.114 when an employees' overtime hours fluctuate, even if his regular, non-overtime hours remain the same from week to week. Condo, 1 F.3d at 603. It is undisputed that the number of hours Daniels actually worked varied from week to week. [Daniels Dep., 100-103.] Though he was rarely scheduled to work more than forty (40) hours, he was expected to stay past the end of his scheduled shift if he was with a customer. [Daniels Dep., 102-105.] Daniels timecards clearly confirm that Daniels' work hours fluctuated from week to week. [Ex. 7.] The hours Daniels actually worked ranged from a low of 32.25 hours (exclusive of paid holiday and sick time) the week of November 30 – December 6, 2008 to a high of 51.75 hours the week of July 13 – July 19, 2008. [Ex. 7, p. 93 & 103.] Accordingly, it is undisputed that the number of hours Daniels worked varied from week to week and therefore Centennial's pay scheme has met the first pre-requisite to 29 C.F.R. § 778.114.

### 2. Daniels' Base Salary Remained the Same From Week to Week.

With the exception of his terminal week of employment with Centennial (which is addressed further below), Daniels received his full agreed upon salary each and every week he worked. Daniels is not aware of *any* situation in which Centennial docked his or any other Inside

Sales Representative's pay for working less than forty (40) hours in a week. [Daniels Dep., 62, 102; Exs. 7 and 14.] To the contrary, Centennial paid Daniels his full salary on at least two (2) occasions when he worked fewer than forty (40) hours. Daniels' time cards and payroll records indicate he received his full salary for the week of August 17-23, 2008 even though he only worked 39.75 hours and for the week of December 28, 2008 – January 3, 2009 though he worked only 38.75 hours. [Ex. 7, pp. 91 and 101, Ex. 14, pp. 111 and 125.] Centennial even paid Daniels overtime premium pay on occasions when he worked less than forty (40) hours, but logged more than forty (40) by taking paid holiday time.

- The week of November 23 – 29, 2008 Daniels worked thirty-nine (39), took two (2) paid holidays totaling sixteen (16) hours and received his full salary plus fifteen (15) hours of overtime premium pay. [Ex. 7, p. 94; Ex. 14, p. 114.]

- The week of December 21 – 27, 2008, Daniels worked only 32.75 hours, took a paid holiday totaling eight (8) hours and received his full salary plus .75 hours of overtime premium pay. [Ex. 7, p. 92, Ex. 14, p. 112.]

- The week of January 4 – 10, 2009 Daniels worked only 34.75 hours, took a floating paid holiday totaling eight (8) hours and received his full salary plus 2.75 hours worth of overtime premium pay. [Ex. 7, p. 91, Ex. 14, p. 91.]

- The week of February 15 – 21, 2009, Daniels worked 37.5 hours, took a paid holiday totaling eight (8) hours, and yet was paid 5.5 hours of overtime premium pay. [Ex. 7, p. 88, Ex.14, p. 108.]

Centennial paid Daniels his base salary of $692.31 every two (2) weeks[4] from pay date June 20, 2008 (pay period June 1 – 14, 2008) through pay date October 24, 2008 (pay period October 5 - 18, 2008). [Ex. 14 pp. 119, 120, 122, 123, 125-127, 129-131.] Centennial promoted Daniels to Inside Sales Representative Trainee II effective October 26, 2008 and increased his annual salary to $21,000. [Ex. 15.] Thereafter, Centennial paid Daniels a base salary of $807.69[5] every two (2) weeks.[6] [Ex. 14, pp. 108-114, 116-117.] Accordingly, it is undisputed

---

[4] Daniels' $18,000 annual salary divided by twenty-six (26) pay periods is $692.31 per two week pay period.
[5] Daniels' $21,000 annual salary divided by twenty-six (26) pay periods is $807.69 per two week pay period.

12

that Daniels' base salary remained the same week after week and Centennial meets the second pre-requisite to paying Daniels pursuant to § 778.114's fluctuating work week method.

### 3.  Daniels' "Regular" Rate Never Fell Below the Minimum Wage.

It is likewise undisputed that Daniels' so-called "regular rate" (i.e. his weekly salary divided by the number of hours he worked in a particular week) never fell below the minimum wage. The most Daniels ever worked in one week was 51.75 hours the week of July 13 – 19, 2008. [Ex. 7, p. 103.] Daniels was earning a base salary of $18,000 annually or $346.15 per week at that time. Dividing this weekly base of $346.13 by 51.75 hours equals $6.68 per hour. This represents the lowest per hour pay rate Daniels received during his employment with Centennial. At that time, the minimum wage was $5.85 per hour. 29 U.S.C. § 206 (1)(A)[7].

### 4.  Daniels Received One Half His Calculated Rate as Overtime Premium Pay.

It is also undisputed that Centennial paid Daniels one half his "regular rate", calculated weekly, for each overtime hour he worked. Centennial's overtime premium payments to Daniels are set forth on his pay stubs as "Sliding Scale Week 1" for overtime work performed the first week of the pay period and "Sliding Scale Week 2" for work performed the second week of the pay period. [Daniels Dep., 59, Ex. 14, pp. 108-114, 116-117, 119-120, 122-123, 125-127, 129.] Payment is calculated pursuant to the formula set forth in the Centennial Sales Compensation Plan which tracks the language of 29 U.S.C. § 778.114. [Ex. 5, p. 5, Ex. 14.] As set forth in the Sales Compensation Plan and permitted by § 778.114, Centennial divided Daniels' annual salary by 52 weeks to obtain his weekly salary, then divided his weekly salary by the number of hours he actually worked each week to get his "regular rate" for that week. Centennial then paid

---

[6] Due to lags in processing the promotion, Centennial paid Daniels at his earlier rate through period ending November 29, 2008, but made up the difference (dubbed "Retro Pay") in his check dated December 19, 2008.
[7] The Federal minimum wage increased to $6.55 per hour effective July 24, 2008 and to its current rate of $7.25 per hour effective July 24, 2009. 29 U.S.C. § 206(1)(B) and (C).

13

Daniels one half his "regular rate" for that week for each hour he worked over forty for the week. [Ex. 5, p. 5, Ex. 14, pp. 108-114, 116-117, 119-120, 122-123, 125-127, 129.] For example, the first week in which Daniels worked more than forty (40) hours was June 29 – July 5, 2008. Daniels worked 42.75 that week. [Ex. 7, p. 104.] $18,000 divided by 52 weeks is a weekly salary of $346.15. That weekly salary divided by 42.75 hours makes Daniels' "regular rate" $8.097 that week. One half that rate is $4.049. That "halftime rate" multiplied by 2.75 hours of overtime is $11.13, the amount Centennial paid Daniels in overtime as indicated at the notation entitled "Sliding Scale Week 1" for pay period ending July 12, 2008. [Ex. 14, p. 129.] The mathematical calculations work out similarly for each of the other weeks in which Daniels worked more than forty (40) hours. [Ex. 14.] The undisputed evidence makes clear that Centennial paid Daniels overtime premium pay equal to one-half his weekly calculated "regular rate" for each hour he worked in excess of forty (40) hours per week. [Exs. 7 and 14.]

### 5.     The Parties Had A Clear Mutual Understanding that Daniels Salary Constituted Straight-Time Pay for All Hours He Worked In A Given Week.

Finally, the evidence confirms the parties' clear mutual understanding that Daniels' salary was intended to be straight time pay for all hours he was called upon to work in a given week. As several federal Courts have made clear, this is all the FLSA requires. "*Section 778.114* is specific as to what the employee must understand before the FWW [fluctuating work week] method may be used. It only requires that 'there be a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each work-week, whatever their number, rather than for working 40 hours or some other fixed weekly work period.'" Samson v. Apollo Resources, Inc., 242 F.3d 629, 636 (5th Cir. 2001). "The parties must only have reached a 'clear mutual understanding' that while the

employee's hours may vary, his or her base salary will not." Valerio v. Putnam Associates Incorporated, 173 F,3d 35, 40 (1st Cir. 1999).

Neither the regulation nor the FLSA requires the employer to ensure the employee understands the manner in which his or her overtime pay is calculated. Bailey v. County of Georgetown, 94 F.3d 152, 156 (4th Cir. 1996). Section 778.114 "does not require an employer to make all employees personnel specialists" nor does it require "the employer to hold an employee's hand and specifically tell him or her precisely how the payroll system works." This is particularly true where, as here, information regarding the method of calculating overtime pay can be "gleaned from employment policies, practices, and procedures." Griffin v. Wake County, 142 F.3d 712, 717 (4th Cir. 1998) *quoting* Monahan v. County of Chesterfield, 95 F.3d 1263, 1275 (4th Cir. 1996). "It is enough if, as here, the employer 'provided its employees with a reasonably clear and accurate explanation of their compensation.'" Griffin 142 F.3d at 717 *quoting* Roy v. County of Lexington, 928 F. Supp. 1406, 1419, vacated in part on other grounds, 948 F. Supp. 529 (D.S.C. 1996), aff'd, 141 F.3d 533 (4th Cir. 1998).

Evidence of the clear mutual understanding between Daniels and Centennial abounds.

- Even before he was offered a position, Daniels knew he would be paid "halftime," not time and a half, for overtime work, including any mandatory overtime work he might be called upon to work during the holiday sales season. [Daniels Dep., 19, 34-38.]

- The offer letter, which Daniels read and signed, specifically states that Daniels would be paid a set salary and further that he would be required to sign the Company's Sales Compensation Plan. [Ex. 2 (reproduced above at p. 3, Daniels Dep., 33, 44.]

- The Centennial Sales Compensation plan specifically states that Daniels would receive his full salary regardless of the number of hours he worked in a given week. The Plan also spells out the details of the overtime compensation scheme and gives an example of how overtime pay is calculated pursuant to § 778.114's fluctuating work week method. [Ex. 5, pp. 4-5, 15, (reproduced above at pp. 4-5) Ex. 6, Daniels Dep., 78-79.]

- Trainer Michael Filson allows employees as much time as is necessary to read the Sales Compensation Plan and ask any questions they might have about the Plan. He does not move on until everyone in the class has read and acknowledged receipt of the Plan. [Filson Dep., 8-10.] Centennial further ensures that all Inside Sales Representatives read and acknowledge the Sales Compensation Plan by not issuing commission checks without first receiving the signed acknowledgment. [Filson Dep., 10-11.]

- Daniels signed the Sales Compensation Plan electronically on June 25, 2008. [Daniels Dep., 78-79; Ex. 6[8].] The signature page states: "I have read and understand the . . . Centennial Wireless Sales Compensation Plan. I agree to be bound by the terms, conditions, and policies contained in the Plan." [Ex. 5, p. 15]

- Employees are free to access or print the Sales Compensation Plan at anytime via the Company's intranet "CentWire." [Filson Dep., 11.]

- Centennial's Associate Handbook, which was given to Daniels in hard copy and formed the basis of Daniels' understanding of how he was paid, specifically states: "Certain non-exempt positions (i.e. inside sales representatives) are paid overtime on a sliding scale." [Ex. 4, p. 18, Daniels Dep., 51, 58-59.] Daniels understood this sliding scale reference to mean he was paid "halftime" for overtime work. [Daniels Dep., 59.]

The parties' clear mutual understanding can also be implied from Daniels' failure to seek further clarification of the manner in which he was paid overtime. "Where the parties' actions and the circumstances demonstrate that the plaintiff was aware of a particular condition of employment, the employee's acceptance of, and continued, employment manifests acceptance of the condition." <u>Zoltek v. Safelite Glass</u>, 884 F. Supp. 283, 286 (N.D.Ill. 1995). Daniels accessed "CentWire," the Company's intranet system, regularly for a variety of reasons but never accessed the Sales Compensation Plan or even attempted to use the intranet's search function to locate information about how is overtime pay was calculated. [Filson Dep., 11, Daniels Dep., 70-71.] Daniels felt comfortable asking questions and raising complaints with his managers Mike Loveless and Joe Ammerman, as well as their boss, District Manager Trent Schott and company trainer Michael Filson – in fact he raised various issues with each of these gentlemen and even complained that he did not like the fact that he was paid "half-time" instead of time and

---

[8] Exhibit 6 is a time stamped confirmation of Daniels electronic signature and acceptance of the Sales Compensation Plan during his training. [Daniels Dep., 74-75, 77; Ex. 6.]

16

a half for overtime pay – but he never asked any of them to further clarify Centennial's overtime pay scheme. [Daniels Dep., 31, 50, 55, 59-60, 87, 93-94, 118, 119.]

In short, while Daniels may not have liked the fact that Centennial Wireless used the 29 C.F.R. § 778.114 "fluctuating work week" method for calculating his overtime pay, the undisputed evidence makes clear that he understood the manner in which he was paid. The undisputed evidence confirms the parties had a clear mutual understanding that Daniels' salary was intended to be straight time pay for all hours he was called upon to work in a given week. Accordingly, Centennial has presented undisputed evidence to satisfy each prong necessary to pay Daniels pursuant to the Fluctuating Work Week method set forth in 29 C.F.R. § 778.114. Daniels' claim fails to state a claim upon which relief can be grant and should be dismissed.

**B.      Partial Pay for Terminal Week Does Not Negate 29 C.F.R. § 778.114 Classification.**

Daniels contends the fact that he was paid for only 39.5 hours (plus forty-eight (48) hours of vacation pay) during his final week of work confirms that he was in fact an hourly employee and not a salaried employee and as such, should be entitled to time and a half for every hour of overtime he worked throughout his employment. [Complaint, ¶ 11.] Daniels is mistaken. The Code of Federal Regulations specifically authorized Centennial to pay Daniels as an hourly employee during his final week of work. "An employer is not required to pay the full salary in the initial or terminal week of employment. Rather, an employer may pay a proportionate part of an employee's full salary for the time actually worked in the first and last week of employment. In such weeks, the payment of an hourly or daily equivalent of the employee's full salary for the time actually worked will meet the requirement." 29 C.F.R. § 541.602.

Daniels worked Sunday – Wednesday, February 22-25, 2009 and was terminated at the end of his shift on Wednesday, February 25, 2009 – the final day of the sales month.[9] [Daniels Dep., 141-146; Ex. 5, p. 15; Ex. 7, p. 87.] In accordance with § 541.602, Centennial paid Daniels for the 31.5 hours he actually worked at a rate of $10.096 per hour. [Ex. A.[10]] This figure represents Daniels' weekly salary, $403.85, (based on $21,000 per year) divided by forty (40) hours – the number of hours he was normally scheduled to work in a week. [Daniels Dep., 102-105.] Centennial also paid Daniels eight (8) hours of accrued holiday pay and forty-eight (48) hours of unused vacation. [Ex. 14, p. 107; Ex. A.] These payments represent full payment due.

The fact that Centennial paid Daniels hourly during his final week of work does not remove him from the class of salary non-exempt employees whom Centennial is legally permitted to pay pursuant to the fluctuating work week method set forth in 29 C.F.R. § 788.114. Accordingly, Daniels' claim fails to state a claim upon which relief can be grant and should be dismissed.

## IV.  Conclusion.

The undisputed evidence confirms the parties had a clear mutual understanding that Daniels' base salary was intended to be his straight time compensation for all hours he was called upon to work in a given week and further, that Centennial paid Daniels all sums to which he is entitled. Accordingly, Daniels' claim fails to state a claim upon which relief can be granted as a matter of law and summary judgment is appropriate.

---

[9] Centennial's sales or "commission month starts on the 26th of one month and ends of the 25th of the following month."  [Ex. 5, p. 15.]
[10] This document was attached to Daniels' Complaint and is reproduced here for the Court's convenience.

Respectfully submitted,

**STEWART & IRWIN, P.C.**

*/s/ Jeffrey B. Halbert*_____
Jeffrey B. Halbert (Attorney No. 22727-49)

*/s/ Suzanne S. Newcomb*_____
Suzanne S. Newcomb (Attorney No. 20290-41)

*Counsel for Defendant, Michiana Metronet, Inc. d/b/a Centennial Wireless and Centennial Communications*

## CERTIFICATE OF SERVICE

I hereby certify the foregoing *Defendant's Brief in Support of Motion for Summary Judgment* was filed electronically this 1st day of February, 2010. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

| | |
|---|---|
| John S. Bloom | Brian M. Simpson |
| jbloom@skbw.com | bsimpson@skbw.com |
| SHAMBAUGH KAST BECK & WILLIAMS | SHAMBAUGH KAST BECK & WILLIAMS |

*/s/ Suzanne S. Newcomb*_____
Suzanne S. Newcomb

STEWART & IRWIN, P.C.
251 E. Ohio Street, Suite 1100
Indianapolis, Indiana  46204
Telephone:     (317) 639-5454
Facsimile:     (317) 639-1319
E-mail: jhalbert@silegal.com
             snewcomb@silegal.com

Si-256260_1